UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF EDUARDO COHEN WATKINS FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 24-MC -22 |

## DECLARATION OF DAVID WALLACE WILSON

I, David Wallace Wilson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1.  I submit this declaration in support of Mr. Eduardo Cohen Watkins's *Ex Parte* Application and Petition for an Order to Conduct Discovery from Richard Rothberg ("Rothberg") and Stephen Gardner ("Gardner") for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 ("1782 Application").

2.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the accompanying Memorandum of Law. ("Memorandum of Law").

3.  Unless otherwise indicated, all facts set forth in this declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents, including the proposed subpoenas; and (c) information supplied to me by the Petitioner or his officers, directors, and employees, or professionals retained by them.

4.  All exhibits attached hereto are true and accurate copies, or true and accurate excerpts of those copies. Where an exhibit is in a foreign language a certified translation is provided.

### I. BACKGROUND AND QUALIFICATIONS

5.  I am a partner in Schellenberg Wittmer's Private Wealth practice. I advise individuals and families on wealth structuring and estate planning for their personal and business assets. I graduated with the following degrees: Master of Law, University of Geneva

1

(Switzerland), Master of Law in Comparative Jurisprudence (M.C.J.), New York University (United States). I was admitted to the Geneva Bar in 2003 as well as to the New York Bar in 2002. I am also a STEP Qualified Practitioner (2002) and I successfully completed the STEP Advanced Certificate in Mediation (2013). I have litigated numerous civil law cases before the Swiss Courts.

6. I have been the Chairman of STEP Geneva from 2014 to 2020, and since 2018 I am an expert on Swiss trust law with the Swiss Federal Department of Justice. I have received several recognitions, inter alia: Legal 500: Private Clients, Leading Firms – French-Speaking 2015-2021, Chambers & Partners High Net Worth 2014-2020, Who's Who Legal: Private Clients, Global Elite Thought Leader 2018-2020, WealthBriefing Swiss Awards: Swiss Leading Individual Award 2015, Private Client Global Elite List 2012/2017-2021, Who's Who Switzerland 2015-2021, CityWealth Leaders List 2017-2020, Expert Guides: Best of the Best 2018-2020.

7. I am the counsel of record for Petitioner in the Swiss actions described below, and I am in charge of leading one of those proceedings for Petitioner.

8. A copy of my resume is attached hereto as **Exhibit A.**

## II. RELEVANT PARTIES AND NON-PARTIES

### A. The Parties

9. **Eduardo Cohen Watkins**. Mr. Eduardo Cohen Watkins ("Petitioner") is the son of Lily Safra and is a collector and dealer of antiques.

10. **Richard Rothberg** Mr. Rothberg is the trustee of the Lily Safra 2012 trust, which owns significant assets in New York, including an apartment. Mr. Rothberg is an attorney at Pierro, Connor & Strauss, LLC, and a member of the New York State Bar.

11. **Stephen Gardner.** Stephen D. Gardner is the former trustee of the Lily Safra 2012 Trust. On information and belief, Mr. Gardner is a resident of New York.

**B.     Relevant Non-Parties**

12.     **Lily Safra.** Mr. Safra was a philanthropist and art collector. Her philanthropy work included projects related to education, science, medicine, religion, culture, and humanitarian relief. She passed away in July 2022.

13.     **Carlos Monteverde.** Mr. Monteverde has asserted in various proceedings that he is the biological son of Ms. Safra's previous husband Alfredo Monteverde and that Ms. Safra legally adopted him following the death of Mr. Alfredo Monteverde.

## III.    FACTUAL BACKGROUND

14.     Ms. Safra, born December 20, 1934, passed away on July 9, 2022. At the time of her passing, she was a widow and left three direct descendants: a son, the Petitioner; a daughter; and a grandson who is the child of Ms. Safra's son who predeceased her.

15.     The estate of Ms. Safra includes, among other things, an extensive art collection, properties in different countries, and several bank accounts.

16.     Petitioner presently does not have a full accounting of the assets in Ms. Safra's estate and thus is in the dark as to the full value of the estate and associated trusts.

17.     Mr. Rothberg and Mr. Gardner, as current and former trustees of the Lily Safra 2012 trust, likely have documents that will determine the location and value of assets belonging to Ms. Safra's estate. Among other things, this includes not only assets belonging to that trust, but also other assets, including valuable artworks that may belong to other entities but that are currently located in the New York apartment owned by the Lily Safra 2012 trust. In addition, on information and belief, Mr. Rothberg and Mr. Gardner may have had communications with other individuals responsible for managing other aspects of Ms. Safra's affairs and estate, including the Safra family office that administered many of the assets at issue in the foreign proceedings.

18. To date, a complete assignment or distribution of the assets within Ms. Safra's estate has yet to occur.

## IV. FOREIGN PROCEEDINGS IN SWITZERLAND

19. The present dispute revolves around the estate of Ms. Safra and two pending actions in Swiss court: a Nullity Action C/16641/2023 filed by Mr. Cohen in August 2023, **Exhibit B**, and a Reduction Action C/18590/2023 filed by Mr. Monteverde in September 2023, **Exhibit C**.

20. Mr. Cohen's Nullity Action primarily seeks declarations that: (1) a 2013 public will of Ms. Safra is null and void and (2) Swiss inheritance law governs the distribution of Ms. Safra's estate. But Mr. Cohen also seeks an order that all defendants named in his action, which includes Ms. Safra's children, grandchildren, and executors of the 2013 will, among others, to produce all information available that would assist with the estimation of Ms. Safra's estate's value.

21. Mr. Monteverde's Reduction Action primarily seeks a monetary award paid out from Ms. Safra's estate because he claims he is an heir to that estate as her alleged adopted son. This Reduction Action, like Mr. Cohen's Nullity Action, also asks the court to order the defendants in that case, which includes Petitioner, to produce all documents necessary to determine the assets and liabilities of the estate.

22. Both of those actions are pending in the Canton of Geneva.

23. Switzerland has 26 cantons. In 2011, a harmonized Federal civil procedural law – the Swiss Civil Procedural Code ("**CPC**") – was introduced, which equally applies to all cantons. In the normal course of a civil action on the merits, the parties – in most cases – must first undergo mandatory conciliation proceedings, which give the parties a simple and cost-effective method to mediate and potentially settle the case. If no settlement is reached, the plaintiff may initiate formal court proceedings within a certain time after the closing of the

4

conciliation proceedings. A request for conciliation is a mandatory and integral first step of virtually all Swiss civil litigation.

24. Mandatory conciliation proceedings for the Nullity Action and Reduction Action are currently scheduled for January 26, 2024.

25. Regardless of the outcome of those proceedings, as per Swiss federal case law, Petitioner, as an heir to Ms. Safra's estate, has the right to information under both Swiss contract law and Swiss inheritance law. As a forced heir, he must be able to know the composition and value of Ms. Safra's estate and the location and value of the assets contained therein to the fullest possible extent. That knowledge will empower Petitioner to identify and recover all of the estate's assets in the possession of third parties, assert any liability claim against third parties, ascertain his rights in the estate, reach settlements as to some or all parties in the pending actions, comply with any court orders to produce information related to the estate's value and assets, and/or aid the court's determination of how to distribute the estate.

26. Petitioner has already invested considerable resources in connection to his Nullity Action and Mr. Monteverde's Reduction Action. But he still does not have a full accounting of his mother's estate.

27. Mr. Rothberg and Mr. Gardner, neither of whom are parties to the Swiss actions described, likely have in their possession documents and other information relevant to Ms. Safra's estate.

28. Swiss courts do not normally have subpoena power over persons like Mr. Rothberg and Mr. Gardner who are not located in Switzerland and are not parties to a Swiss action. A Swiss court would not have any jurisdiction to order or compel documentary or testimonial evidence from Mr. Rothberg and Mr. Gardner.

V. JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

29. As the counsel of record for Petitioner in both pending Swiss actions, I have a deep understanding of the issues in those proceedings. The information sought in the proposed subpoenas attached as **Exhibits B and C** to the Declaration of Jordan Alston (filed concurrently with this 1782 Application) is highly material to the proceedings in the Canton of Geneva.

30. Specifically, the documents and the testimony that Petitioner requests in the 1782 Application will assist Petitioner's case in the pending Swiss actions by empowering Petitioner to ascertain his rights in the estate, reach settlements as to some or all parties in the pending actions, comply with any court orders to produce information related to the estate's value and assets, and/or aid the court's determination of how to distribute the estate.

31. In the pending Swiss actions, Petitioner will have the opportunity to present evidence – including information obtained in the Section 1782 action in the form of documentary evidence and any deposition transcripts – until the factfinding stage of the proceedings is closed.

## VI. SWISS COURT'S RECEPTIVENESS TO SECTION 1782 APPLICATION AND NON-CIRCUMVENTION OF SWISS PROOF-GATHERING POLICIES

32. I have no reason to believe that the Swiss courts would not be receptive to the judicial assistance requested in the 1782 Application, and the request does not seek to circumvent foreign proof-gathering restrictions or other laws or policies of Switzerland. To be clear, there is no restriction or prohibition under Swiss law for collecting and using the type of discovery that is sought by the Petitioner via his 1782 Application. Documents and other records of an estate's assets are typically used in Switzerland in support of proceedings such as the Nullity Action and Reduction Action at issue here.

33. This court previously granted a § 1782 application for medical records in connection to separate probate proceedings in Swiss court. *See In re Safra*, No. 21-MC-640, 2022 WL 3584541 (S.D.N.Y. Aug. 22, 2022). (Despite that case's name, it bears no relation to this matter and involved separate parties.) I am also counsel of record for the petitioner who

filed that § 1782 application. The Swiss court was receptive to that discovery and allowed the petitioner to use that evidence in the probate proceedings.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on January 12, 2024
in Geneva, Switzerland.

_____
David Wallace Wilson